Joyce JAMES, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 01–2011L.

United States Court of Federal Claims.

March 5, 2009.

Joyce James, Virginia Beach, Virginia, pro se.

Steven D. Bryant, Environmental and Natural Resources Division, United States Department of Justice, with whom was Ronald J. Tenpas, Assistant Attorney General, of Washington, D.C., for the defendant. Robert J. Smith, Navy Litigation Office, Washington, D.C., of counsel.

## *MEMORANDUM OPINION AND ORDER*

WOLSKI, Judge.

The defendant has moved to dismiss plaintiff Joyce James's takings claim against the United States. Ms. James was listed as a plaintiff in *Whitley v. United States,* 04–1331L, which was filed August 16, 2004 and consolidated on February 14, 2005 with *Testwuide v. United States,* 01–201L. For the reasons that follow, the motion is **DENIED** without prejudice.

## I. BACKGROUND

The *Whitley* suit presents claims of inverse condemnation against the United States, stemming from the relocation of nine F/A–18 fleet squadrons to Naval Air Station Oceana, and the related increase of flight operations also at Naval Auxiliary Landing Field Fentress, which are located in the communities of Virginia Beach and Chesapeake, Virginia, respectively. *See* Compl. ¶¶ 2, 3, 7. These fighter aircraft allegedly produce "significantly higher levels of noise and vibration than predecessor aircraft," in other words, a "peculiarly burdensome noise that significantly impairs the[ ] use and enjoyment" of certain residential properties. *Id.* ¶¶ 9, 17. Captioning the *Whitley* complaint are 1,521 separate plaintiffs, who are identified by name and their property's street address; Ms. Joyce James is listed on page 64, and is identified as owning the property at 205 Dozier Lane, Virginia Beach, Virginia 23454. The plaintiffs are generally described as having owned "residential properties as of July 1998, located in a noise zone of 65 or more dB DNL [decibel Daily Noise Level] in the 1999 Noise Contours" of the two military installations. *Id.* ¶ 5. (The complaint does not specify whether the listed properties represent only developed properties, or also contain undeveloped, vacant lots zoned for residential use.) The plaintiffs allege that the defendant has made representations, both in its regulations and published materials, and at official, municipal meetings, to the effect that "properties located within a 65 dB DNL noise zone and greater are unsuitable for residential development." *Id.* ¶¶ 12–14. On the basis of the alleged substantial interference with the use and enjoyment of their properties, and the resulting diminution in value, the plaintiffs demand just compensation under the Fifth Amendment. *Id.* ¶¶ 16, 19.

The defendant's motion to dismiss the claim of Ms. James falls under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), that is, a motion to dismiss for lack of subject matter jurisdiction. A jurisdictional fact is clearly called into question: Whether the plaintiff Joyce James is or was the owner of 205 Dozier Lane, as the *Whitley* complaint alleges. *See* Def.'s Mot. to Dismiss Pl. Joyce James ("Def.'s Mot."). To support its factual attack on jurisdiction, the government submitted a photocopy of a title report generated in July 2007 for 205 Dozier Lane, which indicated that the property was instead owned by her sister, Alice James. *See* Ex. B to Def.'s Mot. Responding in the form of a signed letter addressed to the Court, Ms. James contended that the inclusion of 205 Dozier Lane in the pleading was an "error" in that it should have listed the adjacent property, 206 Dozier Lane, which she owns now and owned at the time of the alleged taking. *See* Pl.'s Opp'n. To support her opposition to dismissal, Ms. James attached to the letter a photocopy of a notarized deed dated July 19, 1989, by which document Alice James ostensibly conveyed 206 Dozier Lane to her sister Joyce James.

At the time the *Whitley* complaint was filed, Ms. James was apparently living with her sister, Alice James, at 205 Dozier Lane. Pl.'s Opp'n. After a settlement agreement was executed on behalf of nearly all of the plaintiffs in the consolidated *Testwuide* matter, including Ms. James, *see* Settlement Agreement and Release, *Testwuide v. United States* (Docket Doc. 246) (May 24, 2007) & Ex. B (Docket Doc. 246–10) at 63 (listing Ms. James among the settling plaintiffs), the plaintiffs' counsel discovered that it was Ms. James's sister who owned the identified property at the time of the alleged taking, and that Joyce James was not its owner then or thereafter. *See* Mot. to Withdraw, *Testwuide v. United States* (Docket Doc. 265) (April 16, 2008) at 1. After discovering this, Mr. Jack Ferrebee, the *Whitley* plaintiffs' counsel, moved the Court to withdraw from representing Ms. James. *Id.* at 1–2. The motion was granted without opposition, and Ms. James's claim was severed from the rest. Order, *Testwuide v. United States* (Docket Doc. 277) (June 3, 2008).

The property at 206 Dozier Lane is allegedly an unimproved, vacant lot, Def.'s Reply at 2, but Ms. James contends that its value had been affected as a result of the Navy overflights, much like the value of the other properties encompassed by the settlement agreement. *See* Pl.'s Opp'n. She further claims that if counsel had "brought [the alleged 205/206 mistake] to my attention long before now ... it would have been cleared up long ago." *Id.*

The government asserts, however, based on discussions that its counsel has had with Mr. Ferrebee, that there was no mistake. Purportedly, Ms. James attempted to join the *Whitley* litigation in 2001 as the owner of 206 Dozier Lane, and the following sequence of events is reported to have transpired: She was informed that she could not participate in the litigation because 206 Dozier Lane was an unimproved lot, and thus failed to meet one of counsel's screening criterion. Def.'s Reply at 2. She then proceeded to join the litigation seeking compensation related to 205 Dozier Lane, which met the screening criteria, and which she represented that she owned. *Id.* at 2–3 & Ex. A. Only when a title search was conducted after execution of the settlement agreement was it discovered that Ms. James had never owned 205 Dozier Lane. *Id.* at 3. Ms. James insisted on participating in the settlement and requested the portion of the settlement proceeds designated for her sister's property, even after she was advised that this would not be appropriate. *Id.* at 3–4.

## II. DISCUSSION

### A. Standard of Review

 The condition precedent to all litigation is subject matter jurisdiction, without which "the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868)). Thus, "federal plaintiffs must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction." *Linda R.S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973). Subject matter jurisdiction may be challenged at any time by the parties, or by the court on its own initiative, or on appeal. *Capron v. Van Noorden,* 6 U.S. (2 Cranch) 126, 127, 2 L.Ed. 229 (1804); *Folden v. United States,* 379 F.3d 1344, 1354 (Fed.Cir.2004), *cert. denied,* 545 U.S. 1127, 125 S.Ct. 2935, 162 L.Ed.2d 865 (2005). When evidence is submitted challenging jurisdictional facts— that is, a factual rather than a facial attack on the pleadings—a court may consider this evidence under its obligation to determine whether it has jurisdiction and pursuant to RCFC 12(h)(3).[1] *See Forest Glen Props.,*

---

1. At the time the government's motion was filed, this provision read: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." It has since been slightly modified to conform to the general restyling of the Federal Rules of Civil Procedure, and now reads: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." RCFC 12(h)(3) & rules committee's note (2008). The most recent modifications to the RCFC, of November 3, 2008, are in keeping with the court's policy of amending its rules to reflect parallel changes in the

*LLC v. United States,* 79 Fed.Cl. 669, 676 (2007) (listing cases). Both parties must be afforded the opportunity to submit all available evidence supporting the facts upon which their respective jurisdictional allegations are based. *See Barrett v. Nicholson,* 466 F.3d 1038, 1042 (Fed.Cir.2006) (requiring "the government to come forward with jurisdictional evidence in its possession and to develop additional facts uniquely in its competence"); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988).

 Where jurisdictional facts are challenged, a trial court enjoys broad authority to "inquire into the facts as they really exist," *Wetmore v. Rymer,* 169 U.S. 115, 120, 18 S.Ct. 293, 42 L.Ed. 682 (1897), and thus may properly weigh evidence submitted as "affidavits or otherwise." *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947). The question consequently arises, what form this other evidence might take. In *Gulf Oil Corp. v. Copp Paving Co.,* 419 U.S. 186, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974), the Supreme Court held that a trial court could properly use summary judgment procedures to determine jurisdictional facts when there was "no indication" that the party invoking the court's jurisdiction "was foreclosed from presenting all available evidence concerning the [jurisdictional] issues." *Gulf Oil,* 419 U.S. at 203 n. 19, 95 S.Ct. 392. Accordingly, as part of the procedures for summary judgment, RCFC 56(c)(1) requires the trial court to determine "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact...." RCFC 56(e)(1) clarifies:

> A supporting or opposing affidavit must be made on *personal knowledge,* set out *facts that would be admissible in evidence,* and show that *the affiant is competent to testify on the matters stated.* If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with [it].

(emphasis added); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986) ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."). The motion for summary judgment should then be granted, "so long as whatever is before the [trial] court" meets the Rule 56(c) standard—even if important affidavits are conclusory and the affiants are not qualified in their expertise. *See Exigent Tech., Inc. v. Atrana Solutions, Inc.,* 442 F.3d 1301, 1307–08 (Fed.Cir.2006) (following *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548). A party may not, however, rely on inadmissible hearsay in opposing a motion for summary judgment. *See Scosche Indus., Inc. v. Visor Gear, Inc.,* 121 F.3d 675, 681–82 (Fed.Cir.1997); *Brooks v. Tri-Systems, Inc.,* 425 F.3d 1109, 1111 (8th Cir.2005).

 In this situation, a court would first draw all reasonable inferences in favor of the nonmoving party. *See Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987). If it were nonetheless to find that the material facts of the case are not genuinely disputed, and that these facts establish a lack of subject matter jurisdiction, the moving party would prevail, and the case would be dismissed without prejudice. *KVOS, Inc. v. Associated Press,* 299 U.S. 269, 278–79, 57 S.Ct. 197, 81 L.Ed. 183 (1936); *Rocovich v. United States,* 933 F.2d 991, 994–95 (Fed.Cir.1991). Were the court in contrast to find a genuine issue as to a material fact, "the movant has succeeded in raising a serious doubt as to the court's subject matter jurisdiction." *Forest Glen,* 79 Fed.Cl. at 678; *see McNutt v. GMAC,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Rocovich,* 933 F.2d at 994. The party invoking the court's jurisdiction then bears the burden of establishing it, *see Contreras v. United States,* 64 Fed.Cl. 583, 586 (2005), and ultimately would have to do so by a preponderance of the evidence. *See Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942); *Reynolds,* 846 F.2d at 748.

 Any serious question as to jurisdiction must be resolved before judgment

Federal Rules of Civil Procedure, upon which our rules are patterned. For purposes of the litigation at bar, the 2008 changes are not substantive, and the relevant rules, when quoted, are quoted in current form.

may be rendered on the merits of a case, *see Steel Co.*, 523 U.S. at 93–102, 118 S.Ct. 1003, and where the facts pertinent to decide jurisdiction are sufficiently discrete from those needed to decide the merits, a court will address jurisdiction before proceeding any further. *See, e.g., KVOS*, 299 U.S. at 278, 57 S.Ct. 197; *McNutt*, 298 U.S. at 189, 56 S.Ct. 780. Because "there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court," *Gibbs v. Buck*, 307 U.S. 66, 71–72, 59 S.Ct. 725, 83 L.Ed. 1111 (1939), which may—after limited discovery—choose to decide the matter on a motion supported by affidavits, or through a hearing focused on the jurisdictional issue. *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 (2d Cir.2006); *see also Barrera–Montenegro v. DEA*, 74 F.3d 657, 659 (5th Cir.1996) (" '[T]he district court ... has the power to dismiss [pursuant to Rule 12(b)(1) ] on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.' ") (citation omitted); *Forest Glen*, 79 Fed.Cl. at 677 ("[T]he question of jurisdiction is not one that is confined to some pre-packaged record within which our court must find the facts....").

**B. Analysis**

■■■ The government's motion presents an unusual issue, clouded somewhat by plaintiff's current lack of an attorney in these proceedings. The government offers unrebutted evidence that plaintiff was not the owner of 205 Dozier Lane at the time of the alleged taking or at any time thereafter. *See* Ex. B to Def.'s Mot. This would normally establish that the Court lacks jurisdiction over the claim, pressed by the plaintiff in the *Whitley* complaint, for just compensation relating to that particular property. Ms. James's response is, in essence, that she did

have standing to seek compensation for the taking of an avigation easement relating to *another* property, and that this property—206 Dozier Lane—would have been listed in the caption but for some error. *See* Pl.'s Opp'n. Her claim to ownership of that property at the relevant times has, as of yet, not been challenged.[2] The Court notes that the single-digit difference in the two addresses affords some surface plausibility to the suggestion that the caption reflects a typographical error.

The defendant responds by alleging that Ms. James was specifically told by the counsel bringing *Whitley* that her unimproved lot at 206 Dozier Lane would not be included, and that after being told this she represented herself as the owner of 205 Dozier Lane so that she could participate in the lawsuit. Def.'s Reply at 2–3. There are a couple of problems with this response. First, Mr. Ferrebee's motion to withdraw did not mention any conversations with the plaintiff concerning his rejection of 206 Dozier Lane as a property involved in *Whitley* due to its being an unimproved, vacant lot, or for any other reason. *See* Ex. A to Def.'s Reply (Mot. to Withdraw). This aspect of the government's argument is based on hearsay, as defendant's counsel is reporting a conversation (between Ms. James and her former counsel) in which he did not himself participate. *See* Rule 801 of the Federal Rules of Evidence ("FRE").[3] The usual difficulties attendant with hearsay statements plague defendant's account. The Court cannot know if defendant's counsel accurately remembered or construed what was said by Mr. Ferrebee, or the certainty of Mr. Ferrebee's recollection. This latter point is of particular importance, as the *Whitley* plaintiffs' counsel had dealings with thousands of potential plaintiffs. Since hearsay cannot be used to defeat a motion for summary judgment, *see Scosche Indus.*, 121 F.3d at 681–82; *see also* FRE 802; RCFC 56(e), the Court doubts it can serve to create

---

2. Given, however, that a challenge to subject matter jurisdiction may be raised at any stage of litigation, the defendant would still be free, going forward, to question Ms. James's ownership of 206 Dozier Lane during the relevant period.

3. Moreover, the statement would not appear to qualify as an admission by a party-opponent, *see* FRE 801(d)(2), as defendant's counsel heard it not from Ms. James but from her *former* counsel, who was no longer authorized to speak or act on her behalf.

a genuine issue as to a fact relating to the Court's jurisdiction. *Cf. Forest Glen,* 79 Fed. Cl. at 678 (discussing circumstances when movant succeeds in raising a serious doubt as to subject matter jurisdiction).

Defendant's second problem is that the particular statement its counsel seeks to use may not even be obtainable in a form of testimony from Mr. Ferrebee, as it appears to be covered by the attorney-client privilege—which as a general proposition may be waived only by the former client, here Ms. James. *See Am. Standard v. Pfizer, Inc.,* 828 F.2d 734, 745 (Fed.Cir.1987); *First Heights Bank v. United States,* 46 Fed.Cl. 312, 316–17 (2000) (explaining that the attorney-client privilege "'evaporates upon any voluntary disclosure of confidential information to a third party'") (citation omitted).[4] Limited to the information contained in Mr. Ferrebee's motion to withdraw, the government's evidence on this point is plaintiff's former counsel's statement that plaintiff "represented that she was the sole owner of 205 Dozier Lane" at the time she retained him as counsel. *See* Ex. A to Def.'s Reply at 1. This statement is not inconsistent with plaintiff's allegation that there was some error or misunderstanding on the part of her counsel as to the address of the property she owned. The Court also notes that no allegation in the *Whitley* complaint indicates whether the properties in question were developed or not, and several allegations can be taken to refer to vacant land by discussing the *development* of property. Compl. ¶¶ 12–14.

On the one hand, the Court is presented with infirm evidence that attempts to establish that Ms. James knew that the *Whitley* complaint would not assert a claim concerning her undeveloped plot of land. On the other, we have plaintiff's statement, based on personal knowledge, that the 205 Dozier Lane address was used due to "some error" which was "a terrible mistake," and that she

"would never have filed" a claim based on her sister's property. Pl.'s Opp'n. Although as a pro se litigant, Ms. James is likely unfamiliar with RCFC 11(b)—the rule which provides that unrepresented parties certify, by signing submissions, that the factual contentions contained therein are believed and supportable—her opposition paper presumably conforms to this rule. Her statement, of course, was submitted without knowledge of the contents of defendant's subsequent reply, and as a consequence does not address its specific allegations (albeit some that are based on hearsay). This understandable lack of detail, however, makes it impossible for the Court to determine if she controverts the specific claim that she was told the 206 Dozier Lane property would not be included—although perhaps her recollection of the events in question would be revived upon consideration of the hearsay in defendant's reply paper. As things currently stand, plaintiff concedes that she did not own the property identified in the *Whitley* complaint, but contends the complaint was supposed to identify a different property; while defendant argues, without adequate evidentiary support, that the complaint specifically intended to *exclude* this different property. The government has not succeeded in demonstrating that jurisdiction may not be based on the ownership of 206 Dozier Lane, but Ms. James has not yet demonstrated that it may.

 It occurs to the Court, however, that all of this is putting the cart before the horse. Plaintiff would like the complaint to be considered as if it contained a claim regarding 206 Dozier Lane, but on its face it does not. If the number 205 would have been 206 but for a scrivener's error, a case can be made that it should be rectified through application of RCFC 15(a). Like its counterpart in the Federal Rules of Civil Procedure,[5] this rule "was designed to facili-

---

**4.** *See also Clark v. United States,* 289 U.S. 1, 15, 53 S.Ct. 465, 77 L.Ed. 993 (1933) (explaining that the attorney-client privilege may be lost if the client "consults an attorney for advice that will serve him in the commission of a fraud" provided the charge of fraud has "'some foundation in fact'") (citation omitted) (followed by

*Apotex Corp. v. Merck & Co.,* 507 F.3d 1357, 1362 (Fed.Cir.2007)).

**5.** "RCFC 15(a) is identical to Federal Rule of Civil Procedure 15(a) and case law construing the latter may be used to interpret the former." *Principal Life Ins. Co. v. United States,* 75 Fed.Cl. 32, 33 n. 1 (2007) (citing, *inter alia, Te–Moak*

tate the amendment of pleadings except where prejudice to the opposing party would result," *United States v. Hougham,* 364 U.S. 310, 316, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960), and it is understood that "the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *see, e.g., Intrepid v. Pollock,* 907 F.2d 1125, 1128–30 (Fed.Cir.1990) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)); *Delpin Aponte v. United States,* 83 Fed.Cl. 80, 91–93 (2008). Thus, a court should freely permit amending a complaint if there are insufficiently convincing reasons for denying it. *See Hess v. United States,* 210 Ct.Cl. 483, 491, 537 F.2d 457 (1976).[6]

Plaintiff, now litigating pro se, has not formally attempted to make the case for amendment, and the Court believes that the best way to resolve the jurisdictional question is to allow her the opportunity to move for leave to amend the *Whitley* complaint. If Ms. James desires that the complaint be changed to reflect the 206 Dozier Lane address, she should file a document with the Court on or by March 27, 2009, indicating that she so moves under RCFC 15(a). In this document, Ms. James must give the reason or reasons why she believes the Court should grant her motion, and must specifically explain whether she remembers being told that her undeveloped lot located at 206 Dozier Lane could not be included in the *Whitley* complaint. If her recollection of the events in question is contradicted by that of her former counsel, Ms. James should understand that it is likely that her statement will waive the attorney-client privilege and permit her former counsel to testify as to these events. *See In Re EchoStar Commc'ns*

*Corp.,* 448 F.3d 1294, 1301 (Fed.Cir.2006) ("[W]e recognize that when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter.").

In light of Ms. James's pro se status, and so there is no confusion concerning the care with which these representations should be made, the Court will require that Ms. James's submission take the form of an unsworn declaration under penalty of perjury, pursuant to 28 U.S.C. § 1746. Under this federal law, the following statement must be inserted after the text of the motion:

> I declare under penalty of perjury that the foregoing is true and correct. Executed on (date).

28 U.S.C. § 1746 (2000).[7] The statute then requires her to sign the document. *Id.* If plaintiff chooses not to move to amend the complaint to change the address of her property to 206 Dozier Lane, the government may renew its motion to dismiss for lack of subject matter jurisdiction. Since, however, the possibility exists at present that Ms. James's claim from the *Whitley* complaint may be considered as one relating to 206 Dozier Lane, which she might have standing to pursue, the government's motion to dismiss is DENIED without prejudice.

### III. CONCLUSION

It is not disputed that plaintiff lacks standing to seek just compensation for the taking of an avigation easement from 205 Dozier Lane. The evidence submitted by the government at this time is, however, insufficient to establish that the intent of the plaintiffs in *Whitley,* acting through their counsel, was to exclude 206 Dozier Lane from their complaint. The Court as a consequence cannot

---

*Bands of W. Shoshone Indians of Nev. v. United States,* 948 F.2d 1258, 1260 n. 4 (Fed.Cir.1991)). The rule allows a party to amend its pleadings, as a matter of course, before being served with a responsive pleading, or with the opposing party's written consent or the court's leave, which the latter should "freely give ... when justice so requires." RCFC 15(a).

**6.** RCFC 9(i), formerly RCFC 9(h)(7), which requires that for complaints of inverse condemnation "a party must identify the specific property

interest alleged to have been taken by the United States," does not in and of itself militate against permitting such amendments. *See, e.g., Briseno v. United States,* 83 Fed.Cl. 630, 634 (2008) (allowing amendment to conform a complaint to former Rule 9(h)(7)).

**7.** The penalties for perjury are provided in 18 U.S.C. § 1621, and include fines, or imprisonment for no more than five years, or both.

rule out the possibility of amendment to reflect this other address. The government's motion to dismiss this case is, thus, **DENIED** without prejudice. Plaintiff is granted leave to move to amend the complaint, but such motion must be filed with the Court on or by **March 27, 2009,** and must conform with 28 U.S.C. § 1746.

Furthermore, the Court reminds Ms. James that she must comply with the rules of our court, particularly as they concern service to the defendant. With every filing, the plaintiff must submit a certificate of service showing: (1) the day and manner of service; (2) the person or entity served; and (3) the method of service employed, such as personal or mail. Also, the plaintiff must submit to the Clerk of the Court an original and two copies of every document she wishes to have filed in this case, each accompanied by an appropriate cover sheet identifying the name of the case, its docket number, the date, and the documents submitted. The defendant shall have the normal period of time, under Rule 7.2, to respond to Ms. James's motion to amend.

**IT IS SO ORDERED.**